IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Dylan Ray, individually and behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>A Slice of Italy Pizzeria-Rock Hill Inc., d/b/a Fratelli Ristorante & Pizzeria, and Joseph Cutrone,<br><br>Defendants. | C/A. No. 0:24-cv-03683-CMC<br><br>**Order** |

  This matter is before the court on the parties' joint motion for settlement approval. ECF No. 46. For the reasons discussed below, the court grants the motion, approves the settlement, and dismisses the case with prejudice.

**I. BACKGROUND**

  Plaintiff Dylan Ray ("Ray") is a former server at Fratelli Ristorante & Pizzeria ("Fratelli"), an Italian restaurant in Fort Mill, South Carolina. On June 25, 2024, Ray sued Fratelli and its owner Joseph Cutrone (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to -110. ECF No. 1. In particular, Ray alleged Defendants required him and other servers to participate in a tip pool with non-tipped employees, *id.* ¶¶ 49–57, improperly withheld tips servers earned on to-go orders, *id.* ¶¶ 58–69, failed to provide appropriate notice of the tip credit, *id.* ¶¶ 70–79, unlawfully deducted amounts from his pay, *id.* ¶¶ 91–99, and retaliated against him after he complained about those deductions, *id.* ¶¶ 80–90. Ray later amended his complaint,

and three other servers — Hayri Lee ("Lee"), Melissa Price ("Price"), and Regina La Vecchia ("La Vecchia") — joined the lawsuit as opt-in plaintiffs. ECF Nos. 11, 17, 18, 20.

On July 29, 2025, the court granted Ray's motion for conditional certification and conditionally certified a collective of "[a]ll current and former servers who worked at Fratelli Ristorante & Pizzeria at any time between July 29, 2022, through the present and who were required to share tips received from to-go orders with kitchen staff." ECF No. 40 at 12. The court allowed notice to be distributed by U.S Mail, email, and text message and directed Defendants to produce certain contact information for "all potential collective action members employed by Fratelli during the relevant time period" within 14 days. *Id.* at 13.

Just over two weeks later, on August 13, 2025, the parties informed the court they had reached a settlement and requested the entry of a *Rubin* order. ECF No. 43. In response, the court advised the parties that "because the settlement would resolve claims under the [FLSA], judicial approval is required before it may take effect." ECF No. 44 at 1. This motion followed. ECF No. 46.

## II. LEGAL STANDARD

Congress enacted the FLSA to protect workers from "substandard wages and excessive hours" that can result from the "unequal bargaining power . . . between employer[s] and employee[s]." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). "To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement." *Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (citing *Brooklyn Savings Bank*, 324 U.S. at 706). Parties may, however, "settle a private

FLSA suit under the supervision of the district court," *Hogan v. Allstate Bev. Co.*, 821 F. Supp. 2d 1274, 1281 (M.D. Ala. 2011), "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

"Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, 'district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*.'" *Duprey*, 30 F. Supp. 3d at 407–08 (quoting *Saman*, 2013 WL 2949047, at *3). Pursuant to *Lynn's Food Stores*, the court must "scrutiniz[e] the settlement for fairness" and determine whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." 679 F.2d at 1353, 1355. Additionally, if the settlement agreement includes an award of attorney's fees, the court must review those fees for reasonableness. *See Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) ("FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.").

### III. DISCUSSION

A. **Existence of a Bona Fide Dispute**

"The threshold for establishing whether a bona fide dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and liability of the issues." *Netzel v. W. Shore Grp., Inc.*, No. 16–cv–2552 (RHK/LIB), 2017 WL 1906955, at *4 (D. Minn. May 8, 2017). To determine whether a bona fide dispute exists between the parties, "courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey*, 30 F. Supp. 3d at 408.

Here, Plaintiffs attest they were paid a tip-credit wage of $2.13 per hour, ECF No. 30-1 ¶ 6; ECF No. 30-2 ¶ 6, and contend Defendants violated the FLSA by diverting tips customers left on to-go orders to non-tipped kitchen staff. Defendants, for their part, "adamantly assert[] that servers were not involved in the processing of [to-go orders]" and have "had current servers and former servers confirm this point." ECF No. 46-1 at 2. Given the parties' disagreement, the court concludes a bona fide dispute exists as to Defendants' liability under the FLSA's tip-credit provisions.[1] *See Walsh v. La Tolteca Wilkes Barre, Inc.*, No. 3:21-CV-1628, 2023 WL 8458238, at *16 (M.D. Pa. Dec. 6, 2023) ("The FLSA prohibits employers from keeping tips earned by their employees, instead requiring in accordance with 29 U.S.C. § 203(m) that all tips received by an employee are retained by that employee or pooled for employees who customarily and regularly

---

[1] According to the parties' proposed settlement agreement, the "primary contested issue" remaining is "whether servers were regularly involved with 'To Go Orders,' and whether servers should not have been excluded from receiving tips on 'To Go Orders.'" ECF No. 46-1 at 2.

4

receive tips."); *see also, e.g.*, *Bass v. 817 Corp.*, No: 2:16-1964-RMG, 2017 WL 11458031, at *2 (D.S.C. Sept. 29, 2017) (finding a bona fide dispute where Plaintiff alleged Defendants "required [him] to participate in a mandatory 'tip pool' which included tipping the Owners, Managers and General Managers, and Defendants denied these allegations").

**B.     Fairness and Reasonableness of the Settlement Agreement**

The court considers several factors in evaluating the fairness and reasonableness of the settlement agreement, including (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who has represented the plaintiffs; and (5) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery. *Rich v. Columbia Miyabi, Inc.*, No. 2:16-CV-02148-BHH, 2020 WL 13683169, at *2 (D.S.C. Nov. 16, 2020) (citing *Kovacs v. Ernst & Young (In re Jiffy Lube Securities Litigation)*, 927 F.2d 155, 158 (4th Cir. 1991); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

The total settlement amount is $20,000, which the parties contend "represents a reasonable compromise given the disputed issues and Defendants' documented financial constraints." ECF No. 46 at 5. Under the agreement, Plaintiff Ray will receive $5,750; Plaintiff LaVecchia will receive $4,750; Plaintiff Lee will receive $750; and Plaintiff Price will receive $750. *Id.* Attorneys' fees, negotiated separately, will be $8,000. *Id.*

5

The parties evaluated their claims and defenses through discovery, exchanging payroll records, timekeeping data, financial statements, and internal tip policies. Although considerable discovery was exchanged, notices of the collective action had not been sent at the time of the settlement. Given the collective action nature of the case, the expense and likely duration of the case were significant. It does not appear the settlement negotiations contained fraud or collusion, as they were conducted by counsel on both sides who are experienced in employment litigation and specifically FLSA and wage-and-hour litigation. The amounts are divided proportionately among Plaintiffs based on the number of hours worked by each, with Plaintiff Ray also receiving additional compensation for his asserted retaliation claim. ECF No. 46-1 at 5. Finally, it appears the settlement amount is reasonable given the merits of Plaintiffs' claims and Defendant Fratelli's financial situation. Recognizing also the risks of litigation and the reality of collection on any potential award, Plaintiffs consented to the terms of the settlement as negotiated by their attorneys and proposed within.

Accordingly, based on the analysis above, the court finds the settlement is fair and reasonable for the Plaintiffs involved.

## C.     Reasonableness of Attorneys' Fees

The parties may demonstrate the reasonableness of the attorney's fee by either: (1) using the lodestar method; or (2) representing that the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle the plaintiff's FLSA claim. *See Bonetti v. Embarq Mgmt. Co.,* 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (holding if the parties represent the attorneys' fees was agreed upon separately and without regard to the amount paid to the plaintiff,

6

"unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

Here, the parties represented attorneys' fees were negotiated separately from the award to Plaintiffs. The court finds the amount of attorneys' fees, $8,000, to be reasonable for representation by two attorneys who filed this case in June 2024. The attorneys engaged in significant negotiations with a positive result for their clients.[2] As attorneys' fees were negotiated separately, they do not diminish the amount allocated to Plaintiffs. See *Schlamp v. Am. Home Patient, Inc.*, No. 6:18-CV-1893-TMC, 2019 WL 13270363, at *2 (D.S.C. Apr. 4, 2019) (finding attorneys' fees to be reasonable when separately negotiated); *Bass*, 2017 WL 11458031, at *3 (finding attorneys' fees of $9,000 reasonable when the parties negotiated fees separately). Given the complexity of the claims, the results achieved, and customary rates for similar litigation in this District, the court finds the requested fees are appropriate.

---

[2] Plaintiffs' counsel represented they waived the minimal costs incurred in this litigation so as to provide the greatest benefit to Plaintiffs. ECF No. 46 at 5 n.1.

7

## IV. CONCLUSION

For the reasons above, after due consideration and review of the proposed Settlement Agreement, the court finds the proposed settlement in this case is a fair and reasonable resolution of a bona fide dispute. Accordingly, the court grants the parties' joint motion for settlement approval (ECF No. 46). This action is dismissed with prejudice.

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
October 29, 2025